**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Alfred Joseph SETA, Jr. (81–5080), Robin P. Benner (81–5081), Tammy Nadena Reed (81–5082), Jerome Frederick Crone (81–5083), Defendants-Appellants.**

Nos. 81–5080 to 81–5083.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 16, 1981.

Decided Jan. 26, 1982.

On Rehearing March 10, 1982.

---

* The Honorable Robert M. Duncan, Judge, U. S. District Court for the Southern District of Ohio, sitting by designation.

Gerald F. Dusing, Adams, Brooking & Stepner, Florence, Ky., for defendant-appellant in No. 81–5081.

Albert C. Hawes, Covington, Ky., for defendant-appellant in No. 81–5080.

Edward G. Drennen, II, Florence, Ky., for defendant-appellant in No. 81–5083.

Gary Sergent, Covington, Ky., for defendant-appellant in No. 81–5082.

Patrick H. Molloy, U. S. Atty., Lexington, Ky., Robert Rawlins, James E. Arehart, Asst. U. S. Attys., Lexington, Ky., for plaintiff-appellee in all cases.

Before BROWN and JONES, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PER CURIAM.

Alfred Seta, Jr., Robin Benner, Tammy Reed and Jerome Crone appeal from their jury convictions for conspiracy to possess a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. We affirm their convictions.

In the late morning hours of October 16, 1980, agents of the Northern Kentucky Narcotics Enforcement Unit were on a stake-out at the Shenandoah Apartment complex, located in Florence, Kentucky. These agents had received information from an informant which indicated that possible drug-related activities were occurring there. Early in the afternoon, the agents observed a silver Lincoln Continental automobile arrive at the complex. The driver of this vehicle, after parking it, entered the apartment at 6820 Shenandoah

Drive. Twenty minutes later, the agents observed three males return to the car, open the trunk and remove three large, burlap-covered packages. The agents suspected that these bundles contained marijuana. These packages were subsequently taken into the apartment.

At approximately 4:00 p. m., Officer John Prindle left the scene of the surveillance and traveled to the office of the Boone County Attorney in order to obtain a search warrant for the premises and automobile. Once at the County Attorney's office, Officer Prindle relayed information to a Boone County prosecutor who inserted it into a standardized "Affidavit for Issuance of a Search Warrant" form. However, the search warrant affidavit did not list, in the properly designated space, any of the property to be seized, although references to marijuana could be found on the second page of this form. Also the affidavit recited that Officer Prindle, along with an informant who had previously supplied information that had resulted in arrests and convictions, personally observed the marijuana bales being carried into the premises. After reviewing the affidavit and questioning Officer Prindle, without the presence of a court reporter or transcriber, state judge Robert Hall issued a search warrant for the apartment and motor vehicle and authorized the seizure of "marijuana."

Officer Prindle then returned to the apartment building in order to execute the warrant. During his absence, however, the motor vehicle and its driver departed. Its driver, subsequently identified as Jerome Crone, was stopped and arrested by the Florence police for driving with a revoked license. A search of the automobile netted a small quantity of marijuana.

The search of the apartment was commenced shortly after 9:00 p. m. The agents found in the apartment approximately 125 pounds of marijuana, a triple beam scale and a quantity of Ziploc storage bags. All three persons found in the apartment, Tammy Reed, the lessee of the searched premises, Alfred Seta, her roommate, and Robin Benner, were arrested and charged with trafficking in a controlled substance. Also, nine photographs depicting Tammy Reed, her son and Alfred Seta seated near a large plastic swimming pool full of marijuana were seized. Ultimately, a federal grand jury returned a two-count indictment against all four defendants alleging violations of 21 U.S.C. §§ 841(a)(1) and 846.

Prior to trial, all four defendants, moved to suppress the evidence obtained as a result of the search warrant issued by state judge Robert Hall. These motions were consolidated and heard before a magistrate. The magistrate issued a proposed order that the motion be denied with respect to the marijuana, scale and plastic bags. However, the magistrate ruled that the photographs should be suppressed because they were neither listed in the search warrant nor fell within the "plain view" exception. District Judge Bertelsman entered the proposed order with one modification. He ruled that in the event that defendant Reed took the stand and testified in her own behalf, one photograph could be admitted into evidence for impeachment purposes only. At trial, Tammy Reed did, in fact, take the stand in her own defense, and pursuant to the district court's ruling, the government did introduce one of the seized photographs on cross-examination. Defendant Benner, pursuant to Fed.R.Crim.P. 14, moved for a separate trial after introduction of this photograph. This motion was denied. After three days of trial, the jury returned a verdict of guilty against each defendant on both counts.

■■ On appeal, all the defendants attack the validity of the search warrant issued to search defendant Reed's home. Specifically, they allege that Officer Prindle's affidavit did not provide the requisite probable cause because: (1) it failed to list the items to be seized in the search; (2) it failed to list the time and date on which the affiant observed the activity upon which the probable cause was allegedly based; and (3) it failed to establish both the reliability and credibility of its unnamed informant as required by *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). While the affidavit present in the instant case was not artfully drawn, we cannot conclude that it did not meet the mandates of the Fourth Amendment. Affidavits must be tested and interpreted in "a commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965); *United States v. Hatfield*, 599 F.2d 759, 761 (6th Cir. 1979). Moreover, omissions resulting from negligence or good faith mistakes should not invalidate an affidavit which on its face establishes probable cause. *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978); *United States v. Townsend*, 394 F.Supp. 736, 744

(E.D.Mich.1975). A court, in determining whether an affidavit is sufficient to require issuance of a search warrant, must consider whether the items sought are sufficiently described so that its exercise of judgment in respect to the items seized may not be deemed to be arbitrary. *United States v. Melville,* 309 F.Supp. 829, 832 (S.D.N.Y. 1970). Reading the affidavit as a whole, we do not find the errors asserted by the defendants to be fatal.

▮ The document provides a sufficient description of the materials to be seized. Not only does the affidavit make two references to marijuana on its second page but, the search warrant itself, presented to the issuing judge at the same time as the affidavit, specifically lists marijuana as the item to be seized. In considering the two documents together, it is clear that the issuing judge had no difficulty in determining that marijuana was the object of the search. Further, the document also indicates when the personal observations of the affiant were made. Officer Prindle recited that at 2:00 p. m. on October 16, 1980, he received information from a confidential informant concerning the activities at the Shenandoah Apartment complex. He also asserted that, acting on this information, he observed the activities described above. We note that the affidavit fixes 7:53 p. m. as the time it was submitted to the issuing judge. A "commonsense" reading reveals that Officer Prindle's observations were made some time during this interval.

▮ Similarly, the language used in the affidavit both demonstrates the unnamed informant's basis of knowledge and establishes his trustworthiness as required by *Aguilar v. Texas, supra.* The affidavit states that the informant "personally observed" the defendants carrying "large quantities of marijuana into the . . . apartment." The personal observations of an informant have been held to be sufficient to demonstrate his basis of knowledge. *See Spinelli v. United States,* 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969); *United States v. Rollins,* 522 F.2d 160, 164 (2d Cir. 1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976). Moreover, the trustworthiness of an informant may be satisfied by a recital of the prior occasions on which he proved to be credible. Officer Prindle in his affidavit noted that the informant had "furnished information which has led to several arrests and convictions." Courts have found similar language to be sufficient. *See, e.g., United States v. Dudek,* 560 F.2d 1288, 1292 (6th Cir.), *cert. denied,* 434 U.S. 1037, 98 S.Ct. 774, 54 L.Ed.2d 786 (1977); *United States v. Fleming,* 566 F.2d 623, 624 (8th Cir. 1977). In sum, we conclude that the present affidavit contained no defects which would invalidate the search of defendant Reed's apartment.

The defendants also contend that the trial court erred in its determination of whether probable cause existed by considering testimony concerning the colloquy between Officer Prindle and the issuing state judge where no record of transcript was kept pursuant to Fed.R.Crim.P. 41(c). The defendants' position cannot be supported for it is clear that the trial court did not consider this testimony, but rather, permitted the government to make a proffer for purposes of appeal. After hearing arguments concerning the admissibility of such testimony, the trial court remarked:

> The ruling is that the Court will not consider any oral statements made by the officer to Judge Hall who issued the search warrant. That is the ruling. But I will allow the officer to testify as if by avowal for the purposes of allowing the United States to make its record. I am not considering any oral statements that were made by the officer to Judge Hall on the issuance of the search warrant.

▮ Finally, defendants argue on appeal that the introduction of the photograph to impeach defendant Reed was error. This argument is meritless. In *United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980), the Supreme Court made clear that evidence suppressed because it is the product of an illegal search and seizure can be introduced to impeach the testimony of a defendant. The Court stated:

> We . . . hold that a defendant's statements made in response to a proper cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise proper impeachment by the government, albeit by evidence that has been illegally obtained that is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt.

446 U.S. at 627–28, 100 S.Ct. at 1917. A review of the record clearly demonstrates the photograph was introduced to impeach

certain statements made by defendant Reed on direct examination. There was no error. We also note that the trial court instructed the jury on the purpose of such evidence and thereby limited the amount of possible prejudice.

We have considered the separate contentions of defendant Benner and find that they are without merit.

Accordingly, the judgment of the district court is AFFIRMED with respect to each defendant.

## ON REHEARING

On motion for rehearing, we have discovered that part of our original decision is in error. A review of the record indicates that, although the defendants' objection to the introduction of Officer Prindle's testimony concerning his unrecorded oral statements to Judge Hall was initially sustained, the magistrate subsequently reversed himself on this issue and admitted the hearsay testimony into evidence.

Generally, in federal proceedings, any additional testimony concerning the existence of probable cause must be "taken down by a court reporter or recording equipment and made a part of the affidavit." Fed.R. Cr.P. 41(c). However, this requirement, when applied to state warrant proceedings, is not one of constitutional dimension. *United States v. Chafin*, 622 F.2d 927, 929–30 (6th Cir. 1980); *Tabasko v. Barton*, 472 F.2d 871, 873 (6th Cir. 1972), *cert. denied*, 412 U.S. 908, 93 S.Ct. 2288, 36 L.Ed.2d 974 (1973). In such circumstances, the relevant inquiry is whether state law would permit this additional information to be considered. *United States v. Chafin*, 622 F.2d at 930. Kentucky law is clear that the existence of probable cause must be determined only from the four corners of the affidavit. *See Robinson v. Commonwealth*, Ky., 550 S.W.2d 496, 497, *cert. denied*, 434 U.S. 923, 98 S.Ct. 401, 54 L.Ed.2d 281 (1977). Thus, the magistrate erred in considering the additional information contained in Officer Prindle's testimony at the suppression hearing.

However, this error does not require a new trial for it is clear that the affidavit itself contained sufficient information to establish the existence of probable cause. Our review of the record reveals, and the magistrate acknowledged, that Officer Prindle's testimony was only a recapitula-

tion of the facts recited in his affidavit. Any error resulting from the admission of Officer Prindle's testimony was harmless.

Finding no other error, the judgment of the district court is AFFIRMED.